UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| NAKALA DESIRAE JACKSON, | ) | CASE NO. 1:09 CV 3010 |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| TERRY COLLINS, *et al.*, | ) | <u>AND ORDER</u> |
| | ) | |
| Defendants | ) | |

*Pro se* Plaintiff Nakala Desirae Jackson[1] filed this action under 42 U.S.C. § 1983 against former Ohio Department of Rehabilitation and Correction ("ODRC") Director Terry Collins, ODRC Classification Chief William Eleby, Earlena Schorr, Lorain Correctional Institution ("LORCI") Warden Mark Hauk, LORCI Security Officer Major Foley, R. Armbruster, LORCI Corrections Officer Mr. R, Campbell. In the Complaint, Plaintiff alleges transgender and homosexual inmates are subjected to various forms of discrimination in the Ohio prison system. He seeks monetary relief and injunctive relief.

---

[1] Nakala Jackson asserts he is a transgender inmate. Jackson gives no indication of the gender with which he or she desires to be identified. ODRC records indicate Jackson is a male. For purposes of this Memorandum of Opinion and Order, the Court will refer to Jackson by the pronoun "he."

## Background

Mr. Jackson's Complaint is very brief. It includes few factual allegations. It appears he began his incarceration in LORCI on October 5, 2009. Upon arrival at the prison, he was placed in protective custody. He was told that transgender inmates are kept in protective custody pursuant to ODRC Policy. Mr. Jackson did not want this placement and sought release. He remained in protective custody from October 5, 2009 until October 22, 2009. He claims that on November 5, 2009, the Chairman of Protective Custody made explicit comments about transgender inmates which Jackson thought to be aimed at intimidating him to accept protective custody placement.

Mr. Jackson was assaulted by another inmate on November 21, 2009. The inmate caused urine to come in contact with Mr. Jackson. He states Corrections Officer Campbell "witnessed and left me wet with urine for 30 - 45 minutes, doesn't file incident report." (Compl. at 4.) He claims he was not permitted to contact the Ohio Highway Patrol concerning the November 21, 2009 incident.

The Complaint identifies claims against five of the Defendants. Mr. Jackson asserts Terry Collins is included as a Defendant because "policies/procedure does not include nor protect transgendered/homosexual inmates against discrimination of any kind by ODRC employees." (Compl. at 4.) William Eleby, the ODRC Chief of Classification, and Earlena Schorr are named as defendants for a separation order. Mr. Jackson indicates there was an institutional separation placed on December 1, 2009. He states it was based on a six-month visitation suspension blocking him from visiting Inmate Xavier Jackson who is incarcerated in the Lake Erie Correctional Institution. He clarifies that the separation "did not exist until December 1, 2009, after being classed on November 30, 2009 to Lake Erie Institution." (Compl. at 4.) There are many claims against Warden

2

Hauk based on the actions of other officers within the prison. His claims against Major Foley are listed simply as "negligence, intimidation, discrimination, mental anguish, failure to secure prison condition and treatment." (Compl. at 4.) Finally, Mr. Jackson asserts Mr. Campbell "committed negligence, mental anguish, and discrimination when he knowingly left me in urine for 30-45 minutes after being assaulted with urine by another inmate. Neglecting to follow proper procedure when inmate repeatedly threatened me physically." (Compl. at 4.)

## Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.² *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

As an initial matter, there are no allegations or legal assertions against R. Armbruster in the Complaint. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No.

---

² An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The Complaint simply contains no facts which reasonably associate this Defendant to any of the claims set forth by Plaintiff.

Similarly, there are no allegations suggesting that ODRC Director Mr. Collins and Warden Mark Houk were personally involved in any of the incidents giving rise to the Complaint. Instead, it appears they are named as Defendants solely because they hold supervisory positions. Respondeat superior, however, is not a proper basis for liability under § 1983. *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). The liability of supervisors cannot be based solely on the right to control employees, *Bellamy,* 729 F.2d at 421, nor can it be based on "simple awareness of employees' misconduct." *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982)). At a minimum a plaintiff must show that the supervisor at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Id.* There are no allegations suggesting Mr. Collins or Mr. Houk directly participated in or in any way encouraged the conduct alleged in the Complaint.

Furthermore, while there are factual allegations concerning Mr. Eleby and Ms.Schorr, Mr. Jackson does not specify the legal claims he wishes to assert against them. No specific claim is apparent on the face of the Complaint. Principles requiring generous construction of *pro se* pleadings are not without limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett*

4

*v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them. *Beaudett*, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278. Moreover, Plaintiff's failure to identify a particular legal theory in his Complaint places an unfair burden on the Defendants to speculate on the potential claims that Plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. *See Wells v. Brown*, 891 F.2d at 594. Even liberally construed, the Complaint does not sufficiently state the federal constitutional claim or claims upon which plaintiff intends to base his Complaint against these Defendants.

The claims against Major Foley and Ms. Cantoni, on the other hand, are listed solely as legal conclusions and contain very few factual allegations. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The pleading standard of Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Mr. Jackson's only statement concerning Major Foley is listed simply as "negligence, intimidation, discrimination, mental anguish, failure to secure prison condition and treatment." (Compl. at 4.)

5

For Ms. Cantoni he states, "Refused investigation and to speak to OSP Trooper... ." (Compl. at 4.) This is not sufficient to satisfy the requirements of Rule 8.

Finally, Mr. Jackson's allegations against Mr. Campbell fail to state a claim for "negligence, mental anguish, and discrimination... ." (Compl. at 4.) Although he does not specify a particular constitutional right he believes to have been violated, the court liberally construes his claim for mental anguish as arising under the Eighth Amendment.

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMilian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

There are not enough facts alleged in the Complaint to satisfy even the basic elements

of this cause of action. Mr. Jackson indicates he was assaulted with urine by another inmate. There are no facts, however, regarding the severity of the assault upon which the court evaluate if the condition was objectively serious.

In addition, there is no indication that this officer acted with the requisite mental state to satisfy an Eighth Amendment claim. This portion of the claim could be viewed in two ways. First, Mr. Jackson could be claiming the officer should have prevented the assault. The failure to segregate violent inmates from non-violent inmates has been held to constitute "deliberate indifference" where there is a pervasive risk of harm or where the victim belonged to an identifiable group of prisoners for whom risk of assault is a serious problem. *Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996); *Marsh v. Arn*, 937 F.2d 1056, 1061 (6th Cir. 1991). Mr. Jackson's status as a transgender inmate may place him at a higher risk for assault. He would still have to prove that Officer Campbell knew of the specific risk and consciously disregarded the danger. There are no allegations in the Complaint which suggest this was the case. In fact, other prison officials offered and attempted to impose protective custody on Mr. Jackson because of his transgender status. Based on these allegations, Mr. Campbell cannot be held liable for failing to prevent the assault.

The subjective element of this claim could also be based on the officer's actions after the assault. Here, there are very few facts alleged to shed light on the Officer's actions. Mr. Jackson alleges only that he remained wet for 30-45 minutes. He does not indicate what the Officer was doing during that time. Again, Rule 8 does not require extensive allegations, but it demands more than a suggestion of wrong-doing. *Iqbal*, 129 S.Ct. 1937, 1949 (2009). This court is not required to accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th


Cir. 1987).

Finally, Mr. Jackson's discrimination claim against Officer Campbell is stated entirely as a legal conclusion. Legal conclusions alone are not sufficient to present a valid claim. *Id.*

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

July 23, 2010

---

[3] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.